

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed September 21, 2017**

**United States Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| BAERG REAL PROPERTY TRUST, | § | Case No.: 16-33793-BJH-11 |
| | § | |
| Debtor. | § | |
| | § | |
| | § | |
| BAERG REAL PROPERTY TRUST, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adversary No. 16-03160 |
| | § | |
| GARLAND SOLUTION, LLC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

Garland Solution, LLC (Garland), defendant, filed its motion, and brief in support, seeking a

summary judgment on two of the five causes of action of Baerg Real Property Trust (Baerg), the

plaintiff —breach of contract related to three escrow agreements and anticipatory breach of contract.[1] Baerg filed its response and brief opposing the motion. Hearing on the motion was held on August 18, 2017.

The Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B), (C), and (O).

For the reasons stated here, the Court grants summary judgment as to two of the escrow agreements, Escrow I and Escrow II; denies summary judgment as to the third, Escrow III; and grants summary judgment on the anticipatory breach of contract cause of action.

## I.

This lawsuit concerns the failed, stretched-out purchase of four apartment complexes; the various agreements that provided for the sale were entered into in February 2014 and contemplated a closing in July 2016. Baerg was the seller and Garland was the buyer. The sale did not close as planned. The existing debt on the apartments, which was to be satisfied at closing, came due on July 1, 2016. Baerg then filed bankruptcy under chapter 11 of the Bankruptcy Code on September 29, 2016. This adversary proceeding was initiated by Baerg's complaint filed on December 9, 2016.

Summary judgment is proper where the undisputed material facts establish that a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A material fact is one which may affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). To dispute a material fact, a

---

[1] In addition to the two causes for which Garland seeks summary judgment, Baerg seeks a declaratory judgment and alleges breach of contract generally and, specifically, for failing to close by the July 2016 deadline. Garland denies liability and asserts affirmative defenses; Garland counterclaims for specific performance and declaratory judgment, and alleges breach of contract and anticipatory repudiation.

plaintiff must offer more than a mere scintilla of evidence such that a "reasonable jury could return a verdict" for the plaintiff. *Id*. at 248, 252.

If the undisputed facts establish that a plaintiff cannot prove an essential element of a cause of action, the defendant is entitled to judgment on that cause of action. *Celotex*, 477 U.S. at 323. A defendant need not, however, disprove a plaintiff's claim but must point to a lack of evidence on an essential element of that claim. *See Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912–13 (5th Cir. 1992). The burden then shifts to the plaintiff to go beyond the pleadings and present facts and admissible evidence from which a rational trier of fact could find for the plaintiff. *See id.* at 913. When the record taken as a whole cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.

### A.

Baerg's cause of action for Garland's alleged breach of escrow agreements concerns three separate escrow accounts, Escrow I, Escrow II, and Escrow III; the escrow agreements were entered into by Baerg, Garland, and the escrow agent, Class A Management, LLC (Class A). Baerg complains that the three escrow accounts were not maintained, and disbursements were not made, as contemplated by the agreements and that Garland is responsible for such failures.

Under Texas law, a breach of contract claim has four elements: (1) the existence of a valid contract; (2) that the party performed or tendered performance; (3) that the other party breached the contract; and (4) that the party was damaged as a result of the breach. *City of Dallas v. Delta Air Lines, Inc.*, 847 F.3d 279, 287 (5th Cir. 2017) (quoting *Cordero v. Avon Prods., Inc.*, 629 F. App'x 620, 623 (5th Cir. 2015)). The party claiming breach of contract has the burden of proving each element. *Id*. Elements (3) and (4) are at issue here.

1.

The escrow accounts were not maintained and did not function as provided for under the agreements.  As to Escrow I, Baerg complains of Garland's failure to maintain the required, minimum $65,000 balance.  Garland's only duty under the escrow agreement, however, was to deliver the initial $65,000 to the escrow agent, Class A.  There is no dispute that Garland delivered the funds as required.  The management of Escrow I was the responsibility of Class A.  Even if Garland had some duty to maintain the minimum balance in Escrow I, its alleged failure to do so would not constitute a material breach nor result in damage to Baerg.  The purpose of the $65,000 minimum balance was to ensure that the regular mortgage payments to M&T Realty Capital Corporation (M&T), the lienholder on the properties, were made.  In addition, under the Earnest Money Contract, incorporated by reference, any excess balance in Escrow I was to be applied to a construction loan that *Garland* provided in connection with the deal and which was to be forgiven by Garland at closing.

A material breach is determined by considering the following factors:

 (a) the extent to which the injured party will be deprived of the benefit he reasonably expected; (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of the circumstances including any reasonable assurances; [and] (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Tex. Capital Bank N.A. v. Dallas Roadster, Ltd. (In re Dallas Roadster, Ltd.)*, 846 F.3d 112, 127 (5th Cir. 2017) (citing *Henry v. Masson*, 333 S.W.3d 825, 835 (Tex. App.—Houston [1st Dist.] 2010, pet. denied)).

Baerg contends that though damages are difficult to ascertain, a forensic analysis may reveal the impropriety of how funds were handled in Escrow I.  But there is no evidence that Baerg was harmed by any mismanagement of the Escrow I account.  The evidence proves that the mortgage

payments were made to M&T and that the construction loan was to be forgiven at closing (regardless of the balance). Baerg was not deprived of any benefit; it experienced no harm for which compensation is needed; Garland, assuming a material breach on its part, would lose what it had invested in the properties; there is nothing to cure; and Garland's alleged role in this presents no evidence of bad faith on Garland's part. Though the record reflects that the contractual provisions governing Escrow I were not strictly followed, Garland met its obligation to fund the account with $65,000, the failure to follow the provisions did not result in a material breach of the contract, and, in any event, Baerg suffered no damage as a result of such failure. The Court will therefore grant summary judgment on Garland's alleged breach of the Escrow I agreement.

2.

As to Escrow II, by its complaint, Baerg complains that Garland did not pay into Escrow II the full amount contemplated, $485,000 (out of $550,000, of which $485,000 was to go into Escrow II and the remaining $65,000 into Escrow I). Baerg further complains that it did not receive $180,000 that was to be disbursed to it from the $485,000.

It is undisputed that Garland did not deposit the full $485,000 into Escrow II. But the summary judgment evidence that supports Garland's motion reveals that Baerg, in fact, received all payments due it under the contract. Both Kathy and Hal Baerg, as trustees of Baerg, testified that the trust received all that it was due under the Earnest Money Contract.[2] And as to the $180,000, Baerg offered no evidence of a $180,000 shortfall. In effect, Baerg does not dispute that it received all funds owed under the Earnest Money Contract; rather, it disputes whether payments were made

---

[2]Garland's Mot. for Partial Summ. J. Ex. 13 at 2–3 (providing an excerpt of deposition testimony by Hal Baerg wherein he admits that no payments were ever missed to M&T on account of the mortgages); Garland's Br. in Support of Mot. for Partial Summ. J. at 22–23 (providing excerpts of testimony from both Hal and Kathy Baerg where each admits that all payments to the trust were received on time and in the correct amount), Doc. No. 40.

from the right source. This does not rise to the level of a material breach, *see Tex. Capital Bank*, 846 F.3d at 127, nor does it result in any damage to Baerg.

As for Baerg's allegations that Garland failed to comply with the terms of the Earnest Money Contract concerning the failure to *transfer* funds from Escrow II to Escrow I, such failure (as with the failure to maintain the $65,000 minimum balance in Escrow I) did not, as discussed above, harm Baerg. To reiterate, all payments to M&T were made on-time, despite not having been made from Escrow I. The summary judgment evidence reveals that such payments were made from the accounts for the four apartment complexes, which were funds that Garland was otherwise entitled to under the parties' agreement. The funds simply did not flow through the escrow accounts as contemplated. Baerg suffered no damages as a result of the flow-of-funds, and, besides, Class A bore the responsibility of maintaining the minimum balance in Escrow I, not Garland.

3.

Baerg alleges in its complaint that the terms of Escrow III were breached when a $100,000 distribution was made by Garland. As with the other escrow accounts, Class A, as escrow agent, managed deposits, transfers, and disbursements in accordance with the terms of the Earnest Money Contract and the agreements for Escrow I, Escrow II, and Escrow III. Kathy Fontana signed each agreement on behalf of Class A. Ms. Fontana's deposition testimony reveals that an improper disbursement was made from Escrow III.[3] A transfer, in the same amount, was made back to Escrow III the next day.[4] Baerg alleges that this transaction resulted in a material breach of the Escrow III agreement.

---

[3] Garland's Mot. for Partial Summ. J. Ex. 12 at 14.

[4] Garland's Mot. for Partial Summ. J. Ex. 24 at 1, Ex. 25 at 2.

At this point, an important distinction arises between Baerg's alleged damages related to Escrows I, II, and III. In its complaint, Baerg alleges economic damages with respect to the handling of each of the three escrow accounts. In its brief opposing the motion for summary judgment, however, Baerg alleges for the first time that it suffered nominal damages in relation to Escrow III.[5] The difference between alleged economic and nominal damages is important under Texas law.

As previously explained, damage is one of the essential elements of a breach of contract action. Accordingly, "a breach of contract plaintiff who seeks nothing beyond economic damages cannot receive a judgment based on breach alone." *Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 660 (Tex. 2009). Texas law, however, recognizes a limited exception to this general rule. In breach of contract actions, mere proof of the making of a valid contract and a breach of such contract may fully prove a plaintiff's cause of action for which he is entitled to recover nominal damages, regardless of whether actual damages are proved. *Merritt Hawkins & Assocs. v. Gresham*, 861 F.3d 143, 155 (5th Cir. 2017) (citing *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 664–65 (Tex. 2009)). Indeed, where a party has suffered a legal injury, nominal damages are made available when "substantial loss or injury" is not compensable. *Versata Software, Inc. v. Internet Brands, Inc.*, No. 2:08-cv-313-WCB, 2012 WL 3075167, at *2 (E.D. Tex. July 30, 2012) (quoting *MBM Fin.*, 292 S.W.3d at 665 n.19). Notably, however, "the rule in Texas has been that nominal damages are *not* available when the harm is entirely economic and subject to proof." *Merritt Hawkins*, 861 F.3d at 155 (quoting *MBM Fin.*, 292 S.W.3d at 665) (internal quotations omitted) (emphasis added).

---

[5] Baerg's Br. In Opp'n to Mot. For Partial Summ. J. at 25, Doc. No. 49 ("Damages may be nominal, but there is a factual dispute over whether or not this 'mistake' was timely corrected and whether damages resulted.").

Where the party claiming breach of contract focuses solely on the remedy of economic damages (as is the case here with respect to Escrows I and II), the court will not pursue nominal damages for the party. *See Intercontinental Grp. P'ship,* 295 S.W.3d at 660; *see also 5436, LLC v. CBS Corp.*, No. H-08-3097, 2009 WL 3378379, at *7 (S.D. Tex. Oct. 16, 2009) (citing cases wherein the plaintiff failed to prove damages and was not entitled to nominal damages). Finally, the availability of nominal damages will not save an alleged non-breaching party when that party does not specifically request nominal damages. *Taub v. Houston Pipeline Co.*, 75 S.W.3d 606, 618 (Tex. App.—Texarkana 2002, pet. denied).

As previously discussed, Baerg alleges in its response brief that its damages in relation to Escrow III may be nominal as opposed to purely economic.[6] Although the allegation is vague and made without explanation, it is sufficient upon the summary judgment record to prevent a grant of summary judgment as to Escrow III.[7]

---

[6] The Court's analysis regarding nominal damages does not impact the Court's decision to grant summary judgment related to Escrows I and II because Baerg has only claimed economic damages as to Escrows I and II. There is no summary judgment evidence that Baerg suffered any injury related to the handling of Escrows I and II.

[7] Although Class A was responsible for disbursements under Escrow III, the summary judgment record prevents the Court from concluding that any breach resulting from an improper distribution to Garland's principals lies solely with Class A.

B.

By its First Amended Complaint, Baerg alleges that Garland anticipatorily repudiated the various agreements related to the purchase and sale of the four apartment complexes with its Reconciliation of Funds Addendum dated June 24, 2016 (Addendum).[8]  Baerg points to specific terms used in the Addendum as evidence of a "clear anticipatory breach of the contract because it propose[d] to change the nature of the original terms of the Earnest Money Agreement, including a change of the title company, a change from a purchase to a 'refinance,' [and] include[d] a 'buyout of the Baerg Trust' – a term not contemplated in the original agreement."[9]  The Addendum referred to Garland's "equity infusion" in the properties.  In addition, Baerg complains of Garland's request that four LLCs of its (Garland's) creation be substituted for Garland as the purchasers—one for each property—and that by the Addendum Garland said it had paid $485,000 "into escrow."  On this latter point, as discussed above at II.A(2), Garland in fact did not deposit $485,000 into Escrow II; Garland does not dispute this.  Baerg contends that by these proposed changes, Garland was attempting to change the very nature of the deal and, as such, clearly manifested its intent not to go forward in accordance with their agreements.

The Addendum, with the attached cover letter signed by Garland representative, Jim Ferrante, does not constitute an anticipatory breach by Garland.  "A repudiation or anticipatory breach occurs when a party's conduct 'shows a fixed intention to abandon, renounce, and refuse to perform the contract.'"  *Plains Cotton Coop. Ass'n. v. Gray*, 672 F. App'x 372, 375 (5th Cir. 2016) (quoting *Hunter v. PriceKubeka, PLLC*, 339 S.W.3d 795, 802 (Tex. App.—Dallas 2011, no pet.)) (internal quotation omitted).  An overt communication of an intent not to perform under a valid and

---

[8] Baerg's First Am. Adversary Compl. at 6–7, Doc. No. 33.

[9] *Id*. at 7.

enforceable agreement is required to anticipatorily repudiate an agreement. *Id*. A mere attempt to renegotiate the terms of an initial agreement is not sufficient to find repudiation. *Id*. at 376. Under Texas law, the party claiming an anticipatory breach or repudiation must prove three elements: "(1) an absolute repudiation of the obligation; (2) a lack of a just excuse for the repudiation; and (3) damage to the nonrepudiating party." *May v. Wells Fargo Home Mortg.*, No. 3:12-CV-4597-D, 2013 WL 2984795, at *2 (N.D. Tex. June 17, 2013) (quoting *Gonzalez v. Denning*, 394 F.3d 388, 394 (5th Cir. 2004)) (internal quotations omitted). An attempt to change material terms of the initial agreement must be accompanied "by any affirmative language communicating a fixed intention not to perform under the original agreement." *Plains Cotton*, 672 F. App'x at 376. Whether an anticipatory repudiation has occurred is normally a factual issue to be determined at trial; however, courts may make a determination as a matter of law where there can be only one reasonable interpretation of the statement giving rise to the repudiation. *See Louis Dreyfus Corp. v. Brown*, 709 F.2d 898, 900 (5th Cir. 1983).

Garland's requests to change the title company and to close into four entities created by Garland, the purported buyer, do not, without more, constitute an anticipatory breach of the parties' contract. There is no evidence that Garland proposed these items as conditions to closing. Its alleged attempt to recharacterize the transaction through its use of such terms as "refinance," "equity infusion," "buyout," and amount "invested" may be relevant to the breach of contract claim generally, but it is not evidence of an anticipatory breach.

The language of the Addendum that mentions a refinance states as follows: "This Reconciliation of Funds Addendum is added as an addendum to the Earnest Money Contract and the Purchase and Sale Agreement to facilitate a *refinance* of the . . . Properties."[10] The Addendum

---

[10] Garland's Mot. for Partial Summ. J. Ex. 29 at 3 (emphasis added).

references paying off the M&T mortgages and the interest owed to Baerg from proceeds of the "Refinance Loan." Regardless of the meaning attached to the word "refinance" as it is used here, it does not indicate Garland's refusal to perform under the original agreement. In fact, Garland notes in the attached cover letter that it had secured a lender that would be extending the credit necessary to payoff M&T and to pay interest due Baerg.

The purported "buyout" concerns the remaining balance of the cash portion of the purchase price and interest owed to Baerg upon closing.

The bare statement regarding the amounts invested, the "equity infusion," refers to the $1.4 million that Garland submits was allocated to costs for the properties.

Finally, an anticipatory breach does not arise from Garland stating that Baerg had been paid $485,000. Baerg submits that it was paid only $450,000.[11] While the amount is disputed, its effect on a claim for anticipatory breach is not debatable. Regardless of the amount disbursed to Baerg during the two-year escrow period, Garland did not express an intent to repudiate the original agreement.

Garland did not, by the Addendum, condition its closing the deal on Baerg's assent to the terms contained in the Addendum. The summary judgment evidence does not support an anticipatory breach of the sale.

---

[11] Baerg's Br. In Opp'n to Mot. For Partial Summ. J. at 28 n.121, Doc. No. 49. Interestingly, Baerg's admission that it was paid only $450,000 is consistent with the terms of the Earnest Money Contract:

> Escrow Agent shall release from the Escrow II Account to or for the benefit of the Seller the following amounts . . . : A. Up to $250,000.00 . . . to be utilized as follows: First, pay the $70,000.00 balance of the $90,000.00 Settlement Amount . . . , then Second, pay to Seller $180,000.00; then B. Up to four (4) payments to Seller of $50,000.00 each (not to exceed a total of $200,000.00) . . . .

Baerg's Br. In Opp'n to Mot. For Partial Summ. J. Ex. 1 at 6. The Court is not aware of any other payments that were due under the Earnest Money Contract or any other agreement between Baerg and Garland.

III.

Garland is entitled to summary judgment on Baerg's claims that it breached Escrow I and II. There is no evidence in the record before the court of damage incurred by Baerg on account of Garland's alleged breach of these two escrow agreements. Additionally, Garland satisfied its duties owed under the Escrow I and Escrow II agreements.  Class A was charged under the various agreements with discharging the duties of escrow agent, including depositing, transferring, and disbursing funds from and between the three escrow accounts.

Garland is not entitled to summary judgment on Baerg's claim that it breached Escrow III. The summary judgment record suggests a material factual dispute not appropriate for summary judgment.

Finally, Garland is entitled to summary judgment on Baerg's claim that it anticipatorily repudiated the Earnest Money Contract by its Addendum delivered to Baerg seven days prior to closing the deal.  The Addendum does not reflect Garland's clear intent not to perform and close under the Earnest Money Contract.

### End of Memorandum Opinion ###