

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 30, 2018**

**United States Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| BAERG REAL PROPERTY TRUST, | § | Case No.: 16-33793-BJH-11 |
| | § | |
| Debtor. | § | |
| | § | |
| | § | |
| BAERG REAL PROPERTY TRUST, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adversary No. 16-03160 |
| | § | |
| GARLAND SOLUTION, LLC, | § | |
| | § | |
| Defendant. | § | |

1

## <u>MEMORANDUM OPINION AND ORDER</u>

At the conclusion of Garland Solution, LLC's (Garland) case in chief, Garland offered Exhibit 222 for admission. The Baerg Real Property Trust (Baerg) objected to admission of Exhibit 222, claiming that the document was not properly authenticated and that it was hearsay not within any exception. The Court heard argument from both sides on November 28, 2017. For the reasons set forth below, the Court will admit Exhibit 222, and Baerg's objection is overruled.

## I.

## A.

Exhibit 222 is a twelve-page document consisting of three separate Fannie Mae Multifamily Commitments. Each of the three commitments contains an identifying "Deal Name," which are as follows: The Woods, Oakway Manor Apartments, and Ray Hubbard Ranch II.[1]

All three commitments were submitted by the same person, albeit on two different dates (June 29, 2016 and July 5, 2016). Two of the three commitments were confirmed by Steven Herndon on June 30, 2016, and one of the three commitments was confirmed by Jada M Carter on July 6, 2016. The commitment amounts are also different, with the totals as follows for each deal: The Woods equaled $1,700,000.00; Oakway Manor Apartments equaled $1,475,000.00; and Ray Hubbard Ranch II equaled $3,000,000.00. On each of the three commitments, a box is checked that the commitment amount is "ASAP." Finally, all three commitments reference information related to a refinance. Specifically, the commitments state "Existing Loan Holder:

---

[1] For purposes of this opinion, the documents will be referenced by their Deal Name when discussing a particular commitment and as "Exhibit 222" or "Multifamily Commitments" when discussing the documents as a whole.

Neither Fannie Mae nor Lender" and "Other Refinance Type: Bank." In all other respects, the commitments are relatively similar and are computer-generated forms.

**B.**

In support of admission of Exhibit 222, Garland offered a business records affidavit. The affiant, Leslie F. Dominy, is the Senior Vice President of Greystone Servicing Corporation, Inc. (Greystone). Dominy's statement is sworn and subscribed to by a notary in the Commonwealth of Virginia, County of Fauquier. Dominy maintains that the records referenced in the affidavit were "created and maintained by virtue of [Dominy's] duties and responsibilities," that "[Dominy is] the custodian of records for Greystone," the records were kept in the "course of regularly conducted business activity," and "[i]t is the regular practice of the business activity to make the records." Additionally, Dominy affirms that "[t]he records were made at or near the time of each act, event, condition, opinion, or diagnosis that was recorded" and "[t]he records were made by, or from information transmitted by, persons with knowledge of the matters set forth in the record."

The affidavit contains reference to various documents that were produced with the affidavit, or produced previously, as records from Greystone. Item "y." states: "Various additional documents produced on disk with letter dated May 10, 2017." Garland contends that the May 10, 2017 letter is Garland Exhibit 125.[2] Exhibit 125 is a letter addressed to Garland's counsel, Kaiser Sacco, PLLC, regarding "Subpoena to Produce Documents – Greystone Funding Corporation and Greystone Servicing Corporation related to Case No. 16-33793-bjh-11 (collectively, the 'Subpoena') - Ray Hubbard Ranch I (the 'Property')." It is signed by Justin J. Dayney, on behalf of Greystone as Associate General Counsel. Mr. Dayney represents in the

---

[2] Garland Exhibit 125 is not admitted.

letter that "the most pertinent communications" are the commitments from Fannie Mae, labeled

"Mcodes" for the three properties previously mentioned.  Mr. Dayney goes on to say, "[t]hese

documents demonstrate that, upon closing of the loans, Fannie Mae had committed to purchase

the loans from Greystone, the purchase price for which being the Mortgage Backed Security

Fannie Mae would issue . . . ."

Upon Garland's offer of Exhibit 222, Baerg argued that the Business Records Affidavit

made no reference to the Multifamily Commitments and, therefore, cannot be used to either

authenticate or overcome a hearsay objection to the commitments.  In addition to the references

previously discussed, Garland countered that the Multifamily Commitments were attached as an

exhibit to a Greystone representative's deposition and, moreover, Baerg utilized those

Multifamily Commitments in its questioning at that deposition.[3]  Baerg asserted that the attached

deposition exhibits were not admitted in the Court's record.  Rather, the deposition itself is

admitted without the attached exhibits.  At the conclusion of these arguments, the Court took the

matter of Exhibit 222's admissibility under advisement.

## II.

## A.

Courts are to make preliminary determinations regarding the admissibility of evidence in

accordance with Rule 104 of the Federal Rules of Evidence.  Rule 104 states in relevant part,

"[t]he court must decide any preliminary question about whether . . . evidence is admissible. In

so deciding, the court is not bound by evidence rules, except those on privilege."[4]

Federal Rule of Evidence 802 provides that hearsay is not admissible unless an exception

applies, either by federal statute, contained in the Federal Rules of Evidence, or other rules

---

[3] Hudson Dep. 48:15–49:8.
[4] Fed. R. Evid. 104(a).

prescribed by the Supreme Court.[5] Hearsay is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."[6] Records of a regularly conducted activity, more commonly referred to as the business records exception, are excepted from the rule against hearsay if the evidence adheres to the following requirements:

> (6) Records of a Regularly Conducted Activity. A record of an act, event, condition, opinion, or diagnosis if:
> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.[7]

Finally, Federal Rule of Evidence 901(a) provides that evidence is properly authenticated if the proponent produces "evidence sufficient to support a finding that the item is what the proponent claims it is."[8] Certain evidence is self-authenticating, to include evidence that meets the requirements of the business records exception to the rule against hearsay.[9] Self-authenticated "Certified Domestic Records of a Regularly Conducted Activity" are admissible if the proponent provides the adverse party with notice of an intent to offer the record and makes the record available for inspection to allow the adverse party an opportunity to challenge the record.[10]

---

[5] Fed. R. Evid. 802.
[6] Fed. R. Evid. 801(c).
[7] Fed. R. Evid. 803(6).
[8] Fed. R. Evid. 901(a).
[9] Fed. R. Evid. 902(11).
[10] *Id.*

## B.

Business records that were not created by the entity from whom the court receives

evidence to meet the requirements of Rule 803(6) might still overcome a hearsay objection

regarding their admissibility.

> The Fifth Circuit has ruled that—in certain circumstances—documents that are
> prepared by outside entities and are then incorporated into a testifying
> organization's business records can be proven up as business records by a witness
> from the testifying organization rather than a witness from the outside entity that
> actually created the records.

*In re Couture Hotel Corp.*, 554 B.R. 369, 376 (Bankr. N.D. Tex. 2016).

In *United States v. Ullrich*, the government was able to overcome a hearsay objection to

two exhibits—an inventory schedule and a manufacturer's statement of origin—even though

neither the testifying witness, nor his organization, had prepared the records. 580 F.2d 765, 772

(5th Cir. 1978). It was the general manager of a car dealership who testified about these records,

despite their preparation by Ford Motor Company. *Id.* at 771. The general manager testified that

upon transmission of these records, they were kept in the regular course of the dealership's

business, and were "[i]n effect, . . . integrated into the records of the dealership and were used by

it." *Id*. The court noted, "[w]e think it obvious that these documents are admissible as business

records under Fed. R. Evid. 803(6). They are records transmitted by persons with knowledge

and then confirmed and used in the regular course of the dealership's business." *Id.* at 772.

Likewise, in *United States v. Duncan*, the Fifth Circuit held that the district court did not

commit error when it admitted documents as business records even though the record was not

created by the testifying organization. 919 F.2d 981, 987 (5th Cir. 1990). At issue in *Duncan*

were documents maintained by an insurance company. *Id.* at 985–86. Specifically, the

insurance company compiled its records from the business records of hospitals; those documents

were incorporated in the business records of the insurance company, defeating the contention that the insurance company's records were inadmissible hearsay. *Id.* at 986. The Fifth Circuit instructed, "[t]here is no requirement that the witness who lays the foundation be the author of the record or be able to personally attest to its accuracy. Furthermore, there is no requirement that the records be created by the business having custody of them." *Id.* (citations omitted). Rather, the issue surrounds the reliability or trustworthiness of the records sought to be introduced, and the court's discretion is applied to determine such reliability or trustworthiness. *Id.* at 986–87.

Despite authority in *Ullrich* and *Duncan*, the court in *Couture Hotel* held that the business records exception would not apply to records that were not created by the testifying organization. *Couture Hotel Corp.*, 554 B.R. at 378–79. In so holding, the court looked to the requirements of Rule 803(6), more specifically that "[a] qualified witness for the purposes of proving up a business record 'is one who can explain the record keeping system of the organization and vouch that the requirements of Rule 803(6) are met.'" *Id.* at 378 (quoting *U.S. Commodity Futures Trading Comm'n v. Dizona*, 594 F.3d 408, 415 (5th Cir. 2010)). The proponent's testimony in *Couture Hotel* failed to demonstrate that he had any knowledge regarding the record keeping requirements of the organization from which the record was created. *Id.* at 379. Although the proponent testified how the records were used in its own business, those facts alone could not provide sufficient evidence of how the records were produced or how they were used in the business of the organization that created the record. *Id.* As such, the court sustained the hearsay objection and refused to apply the business records exception to the offered exhibits. *Id.*

**C.**

Prior to its admission, a document must be properly authenticated.  Fed. R. Evid. 901(a); *United States v. Ceballos*, 789 F.3d 607, 617 (5th Cir. 2015).  The proponent must provide some evidence that the document is what the proponent claims it to be.  *United States v. Isiwele*, 635 F.3d 196, 200 (5th Cir. 2011).  The proponent's authentication burden is low, and witness testimony with knowledge of the item suffices to properly authenticate the item.  *See Ceballos*, 789 F.3d at 617–18; *United States v. Lundy*, 676 F.3d 444, 453 (5th Cir. 2012).  Reliance on circumstantial evidence is enough to allow admission of disputed evidence because the court does not require conclusive proof of the item's authenticity prior to its admission.  *Yaquinto v. Ward (In re Ward)*, 558 B.R. 771, 780 (Bankr. N.D. Tex. 2016).  "Rule 901 does not limit the type of evidence allowed to authenticate a document."  *Id.* (quoting *United States v. Jackson*, 636 F.3d 687, 693 (5th Cir. 2011)).

Some items of evidence are self-authenticating.[11]  Items that satisfy the requirements of the business records exception to the rule against hearsay are self-authenticating if the proponent complies with the notice and inspection requirements of Rule 902(11).[12]  This Rule dispenses with the necessity of calling a custodian to testify to the authenticity of certain business records.

Subject of litigation is compliance with the Rule's notice and inspection requirements. "While the rule does not establish what constitutes a fair amount of time, the time must be of such a duration so that the '[evidence] can be vetted for objection or impeachment in advance.'" *United States v. Olguin*, 643 F.3d 384, 390 (5th Cir. 2011) (quoting *United States v. Brown*, 553 F.3d 768, 793 (5th Cir. 2008)).  In *Olguin*, the court was satisfied with an inspection period of six months.  *Id.* at 391.  And it was not until five days prior to trial that the government provided

---

[11] Fed. R. Evid. 902.
[12] *Supra* note 9.

notice that it would seek to introduce the records that were received by the defendant six months before trial. *Id.* The relevant time periods complied with the requirements of Rule 902(11), and, therefore, the government satisfied its burden to properly authenticate the records. *Id.*

At least one court held that notice is sufficient if provided in the proponent's pre-trial brief and list of exhibits. *In re McFadden*, 471 B.R. 136, 152 (Bankr. D.S.C. 2012). Provided in advance of trial, the brief and list of exhibits satisfied the notice and inspection requirement of Rule 902(11) notwithstanding lack of citation to the specific rule for which the records would be self-authenticated. *Id.* ("A specific citation to the Federal Rules of Evidence is not necessary to give effect to the notice of intent to use the [evidence] at trial.").

### III.

### A.

First, the Court considers the issue of proper authentication. It is Garland's burden to authenticate Exhibit 222, and that burden is satisfied. Garland was to come forth with evidence that the documents are what they claim them to be, namely that they are Multifamily Commitments from Fannie Mae. In reviewing the evidence submitted in connection with this exhibit—the business records affidavit, the letter accompanying Exhibit 222 from Greystone,[13] and the deposition of a Greystone representative[14]—it appears to the Court that these Multifamily Commitments are what Garland claims them to be. Chip Hudson, the deposed representative from Greystone, testified that he had sufficient knowledge related to the documents and provided details regarding how the information was transmitted. This satisfies the proponent's burden under Rule 901(a).

---

[13] Garland Ex. 125.
[14] Hudson Dep. 21:3–22, 48:15–49:8.

Moreover, and further developed by the reasons stated below, these documents are self-authenticating under Rule 902(11). The requirements of the business records exception to the rule against hearsay are met, and Garland complied with the applicable notice and inspection requirements. Exhibit 222 was used during the deposition of Chip Hudson by both Baerg and Garland. At the latest, therefore, Baerg had access to these documents on June 13, 2017.[15] A little more than a month before the start of trial, Garland provided an exhibit list on August 22, 2017, that included Exhibit 222.[16] Baerg was given a fair opportunity to challenge these items after the notice and inspection period. Compliance with this requirement, coupled with the fact that these documents satisfy the requirements of the business records exception, allow Exhibit 222 to be self-authenticated.

## B.

Also, despite Greystone not having created the Multifamily Commitments, they are records integrated into the business records of Greystone and overcome a hearsay objection. To reach this conclusion, the Court must develop some logical links in a business records chain.

First: the business records affidavit. This affidavit was not included in Garland's evidence, nor was it included on their exhibit list filed before trial. Nonetheless, the Court is entitled to consider this document in its ruling on the admissibility of Exhibit 222.[17] Item "y." in the affidavit references "Various additional documents produced on disk with letter dated May 10, 2017." As previously mentioned, the affidavit complies with the various business records custody requirements and is signed under oath by the affiant. This takes the Court to the second link in the chain.

---

[15] Hudson Dep. 48:15–49:8.
[16] Case No. 16-03160 Doc. No. 62.
[17] Fed. R. Evid. 104(a).

Second: the letter dated May 10, 2017.[18]  Submitted in response to a subpoena from Garland, this letter specifically details particular communications from Fannie Mae.  Those particular communications are the Multifamily Commitments from Fannie Mae that were issued for three of the four properties being sold by Baerg.  The letter goes on to explain the purpose of the Multifamily Commitments and an approximation of when they were issued.  The letter is signed by counsel for Greystone.  Completing the chain, the Court reviews the third link.

Third: Chip Hudson's deposition taken June 13, 2017.[19]  In his deposition, Mr. Hudson explains that Exhibit 222 is "Fannie Mae's commitment to fund the loan."[20]  According to Mr. Hudson, the information contained in Exhibit 222 is obtained when Greystone submits the deal to Fannie Mae, which is done electronically.[21]  When asked at what stage in the process this transmission occurs, Mr. Hudson responded that it "is a confirmation of the rate lock."[22]  From this testimony, the Court can infer that Greystone uses records generated by another organization in the regular course of Greystone's business.  In fact, Mr. Hudson testified to the contents of the Multifamily Commitments by indicating that the information is first provided by Greystone and then populated by Fannie Mae.  When asked if Greystone needed any further approvals from Fannie Mae (aside from the Multifamily Commitments) to move forward with funding the loans, Mr. Hudson simply responded, "No."[23]

Considering the requirements of the business records exception, Baerg's objection to Exhibit 222 on hearsay grounds must be overruled.  Greystone compiled its own records from the business records of Fannie Mae.  Leslie Dominy, a Senior Vice President with Greystone,

---

[18] Garland Ex. 125.
[19] Baerg Ex. L.
[20] Hudson Dep. 21:10–11. During his questioning, Mr. Hudson was asked only about one of the three Multifamily Commitments from Fannie Mae, specifically The Woods.
[21] *Id.* at 21:14–16.
[22] *Id.* at 21:22.
[23] *Id.* at 22:18.

laid the proper foundation for these records because there is no requirement that the author of the record lay the foundation.  *Duncan*, 919 F.2d at 986.  The Multifamily Commitments were transmitted by persons with knowledge and then confirmed and used in the regular course of Greystone's business.  *Ullrich*, 580 F.2d at 772.  Greystone directly relied on the commitments before proceeding to fund the loans to Garland.

As distinguished from *Couture Hotel*, Mr. Hudson was able to discuss the record keeping system of Fannie Mae as it applies to these commitments.  *Couture Hotel*, 554 B.R. at 378–79. In fact, the information in the commitments came directly from Greystone's submission of the loans to Fannie Mae.  Without said submission, the commitment could not populate and would not have been re-transmitted to Greystone.  Mr. Hudson did not, however, specifically testify to how the Multifamily Commitments were produced or how they were kept in Fannie Mae's records.  The court in *Couture Hotel* recognized, however, that admission of business records created by another organization is a "close question."  *Id.* at 378.  As such, the Court is satisfied that the foundation laid is sufficient to satisfy the requirements of the business records exception. Exhibit 222 is admissible as a business record under Rule 803(6).

### IV.

### Conclusion and Order

The Court concludes that the documents included in Exhibit 222 have been properly authenticated under Rule 901(a).  They have all the indicia of trustworthiness that the federal rules require for the admission of hearsay evidence.  The Court will, therefore, admit Exhibit 222.

SO ORDERED.

### End of Memorandum Opinion and Order ###